Francis T. Donohue III, Esq. (CSB# 106801)
e-mail: ftd@vctlaw.com
VOSS, COOK & THEL LLP
895 Dove Street, Suite 450
Newport Beach, California 92660-2998
(949) 435-0225

Attorney for Creditor Joseph Goveia

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>BARBARA, Joseph Anthony<br><br>Debtor. | Case No. 8:13-10664-CB<br><br>Chapter 7<br><br>**Notice of Opposition and Request for Hearing on Motion to Avoid Lien**<br>[LBR 9013-1(o)]<br><br>Hearing requested |

To the office of the United States Trustee, the Office of the Bankruptcy Clerk, the Bankruptcy Court, the debtor, and all interested parties:

1. Debtor Joseph Goveia objects to debtor Joseph Anthony Barbara's motion to avoid lien under 11 U.S.C. 522(f).

2. Debtor Joseph Goveia hereby requests that the court set this motion for an evidentiary hearing and oral argument.

3. Goveia hereby gives notice to debtor that any reply to this opposition must be filed with the court and served on the opposing party not later than seven days prior to the hearing on the motion.

4. Goveia reserves the right to submit additional written evidence and argument in opposition to the motion when it is noticed for hearing.

5. Goveia's opposition is based on this notice, the accompanying declaration of appraiser Steve Millbern and his reports and reviews, attached as exhibits to his declaration, the argument and reasons presented below, and such other argument and evidence that may be presented in opposition to the motion when it is noticed for hearing or at the hearing on the matter.

Grounds for this opposition.

As noted in the moving papers, creditor Joseph Goveia holds a judgment lien security interest in the residence owned by debtor Joseph Barbara. Goveia's recorded lien amount is $229,402.17. The residence is also encumbered with a first deed of trust held by Bank of America in the amount of $400,000. Barbara also contends that he is over 55 years of age and has no income, and thus would be entitled to California CCP §704.730 exemption of $175,000.

The only factual dispute in this motion is Barbara's claim that his property has a value of only $580,000 when the true fair market value is at least $685,000. If Barbara's valuation is used, Goveia's judgment lien would be reduced to a remaining value of only $5,000. If Goveia's valuation is used,

Goveia's judgment lien would be reduced to a remaining value of $110,000. [That is: $685,000 – $175,000 – $400,000 = $110,000.]

Barbara's claim that his property has a value of only $580,000 is based on an appraisal report by Thomas Garland, which is attached to the moving papers. But that appraisal has many errors, and Garland's report itself evidences that omissions were made to skew the results downward.

After creditor Goveia received Barbara's motion and the Garland appraisal, Goveia had an independent appraiser of residential property review the Garland appraisal. That review and new appraisal was done by Steve Millbern, who is a California certified real estate appraiser, a member of the Appraisal Institute since 1974, and who was awarded SRA designation in 1984. Mr. Millbern's review of the Garland appraisal is Exhibit 2 to this opposition. Millbern's own appraisal of the property is Exhibit 3 to this opposition.

Mr. Millbern found a number of problems in Garland's appraisal and analysis. The most notable problems are that of the eight potential comparables in the neighborhood, Garland selected only three – the three with the lowest prices. A review of the map in Garland's appraisal report will also show that Garland had originally had additional properties selected as comparables (he has them identified on the map) but he removed them from his analysis, which allowed him to lower his property valuation. Garland also valued to adjust comparables upward when comparables had significant adverse impacts or sales concessions.

In fact, after arriving at his artificially low $585,000 number in his comparable sales analysis, Garland then lowers the valuation another $5,000 to a final value of $580,000, without even trying to give an explanation for this last reduction.

//

*In re Joseph A Barbara.*, Case No. 8:13-bk-10664-CB
**Notice of Opposition and Request for Hearing**

As summarized on pages 10 to 13 of Millbern's review [Exhibit 2] the Garland appraisal includes the following problems:

- Misstates the zoning as SB-R1 when it is RHD-20.
- Says prices were stable when they were trending up.
- Misstates the property lot size.
- Skewed selection of comparables to lower appraised value
- Incorrectly adjusts comparables, by ignoring price concessions and impairments in the comparables.
- Contradicts itself on whether the condition is average or below average.
- It reaches a final value that falls below the unadjusted selling prices of the comparable sales, which is contrary to standards in the industry.
- Does not adjust comparables for the time of sales.
- Unexplained adjustments to the land's square foot value which further lowered the appraised value of the property.

Because of these errors in the valuation, and the fact that these errors appear to be intended and done to give an artificial lower valuation of the property, the motion should be denied, or at least the value of the property should be determined to be $685,000 – which is the valuation given by Millbern.

The Millbern valuation gives a more accurate valuation of the Barbara property. All comparable sales were included in the appraisal, with the final analysis excluding two sales which if included would have raised the appraisal value. [See, Exhibit 3, pages 18 and 21.] The range of comparable sales was between $658,000 to $721,000 with the mean and average to be $686,200. Millbern's valuation of $685,000 is less than the median price.

*In re Joseph A Barbara.*, Case No. 8:13-bk-10664-CB
Notice of Opposition and Request for Hearing

Goveia therefore requests that the court deny Barbara's motion or, in the alternative, use the Millbern valuation of $685,000 as the value of Barbara's property, and thereby reduce the Goveia judgment lien on the Barbara property to $110,000.

Respectfully Submitted,

Dated: May 13, 2013                    VOSS COOK & THEL, LLP

_____
Francis T Donohue, III
Attorneys for Creditor Joseph Goveia

## Declaration of Steve Millbern

I, Steve Millbern, hereby declare:

1. I am a full time Real Estate Appraiser. My home office is located at 21142 Flametree, Lake Forest, CA 92630.

2. I have over 30 years of experience with residential real estate in Southern California, I hold Certified Appraisal license from the State of California and the SRA designation from the Appraisal Institute (certifying me as an expert in the appraisal of residential property). A copy of my curriculum vitae is attached as Exhibit 1 to this declaration.

3. I have reviewed the appraisal done by Tom Garland for the residential real property owned by Joseph Barbara located at 132 Dolphin Avenue in Seal Beach, California and have made my own independent appraisal of the property.

4. It is my professional opinion that the Fair Market Value (as defined in Treasury Department Regulation 20.2031-1b) of the property on 3/20/2013 was $685,000. Mr. Garland's appraisal gives the property a "value" of $580,000 as of that same date. My Appraisal Report is Exhibit 3 to this declaration. I have also drafted a review of the Garland appraisal. My Field Review of the Garland appraisal is Exhibit 2 to this declaration. Those documents contain the details of the scope of work, limiting conditions, and findings.

5. For the reasons set forth below and in my attached reports, it is my opinion that Mr. Garland's appraisal undervalues the property and his appraisal does not appear credible due to excessive errors and faulty methodology. My Field Review of his appraisal identified three major procedural issues that are incompatible with a bankruptcy assignment; eleven

errors; and seven value issues. The Field Review is Exhibit 2 to this declaration and it contains the details of the scope of work, limiting conditions, and findings. My comments and concerns about the Garland report are on pages 10 through 13 of that Field Review.

6. Among the reasons I find Mr. Garland's appraisal undervalues the property are the following:

a. The Garland appraisal selected the lowest possible comparable sales. Other similar and equally located comparable sales and listings were present at the time but were neither included or commented upon. A search of the MLS revealed 8 potential comparables, and the three selected for the appraisal had the lowest prices. Selecting only the lowest sales among a selection of equally comparable sales is inconsistent with the actions of peers in the appraisal business.

b. There is evidence in the Garland appraisal that higher comparable sales were originally included but were later removed without comment or explanation. Examination of the location map in the appraisal shows a total of 4 comps when only 3 are contained in the final document. Specifically, a comparison of the addresses in the location map to the addresses in the appraisal shows that the addresses do not match the comp numbers as currently displayed in the final appraisal.

    Comp #4 on the map is now comp #2 in the appraisal.
    Comp #3 on the map is now comp #1 in the appraisal.
    Comp #2 on the map does not appear in the appraisal.
    Comp #1 on the map does not appear in the appraisal.

c. The appraisal fails to note that comp #2 backs to a two story

commercial building (the vacant Bay Theater) with adverse impact (non-residential use). The appraisal failed to adjust for this factor. If properly adjusted for this factor the indicated value would have increased.

d. Comp #3 shows a sales concession of $3,000 but no corresponding adjustment was made.

e. The "Sales/Time" dates shown in the grid are closing dates. Peers in the appraisal business adjust from contract dates rather than sale dates because the contract dates represent the "meeting of the minds" in establishing a price.

f. None of the comps were adjusted for time because the appraisal incorrectly stated the market to be stable. In fact the market was increasing and upward time adjustments should have been applied to all three comparables (which would have resulted in higher indicated values for the subject property).

g. Land was adjusted at $75/sf with no support or comment. Unless zoning would allow one of the comps to build a second unit there is no indication that any adjustment at all is warranted. Had the lots been adjusted appropriately a higher indicated value for the subject property would have resulted.

h. The final concluded value falls below the unadjusted selling prices of all the comps. Peers in the appraisal business as well as both conventional and HUD/FHA guidelines indicate that a reliable conclusion of value should be bracketed by the unadjusted selling prices of the comparables.

i. The reconciliation of the value is flawed. The appraisal states that the indicated value from the market approach is $585,000. Yet the

*In re Joseph A Barbara.*, Case No. 8:13-bk-10664-CB
Decl. for Millbern re: Opposition and Request for Hearing

final conclusion of value is $580,000. Somehow the value declined $5,000 for no reason.

j. The Garland appraisal contains a Cost Approach to value the property, but it is not complete and not accurate for the following reasons.

- The price per square foot figures used in the report are not supported and he gives no indication of where he came up with these numbers.
- The report makes reference to "Builders Cost.com" but provides no documentation as required by USPAP.
- The report references conversations with builders but contains no documentation as to who or when.
- The land value is stated to be determined by extraction and further states that "the cost of the improvements were subtracted from the sales price to determine land value." This procedure for Extraction is incorrect per the definition of "Extraction" found in the Dictionary of Real Estate published by the Appraisal Institute (page 106) which states that the <u>depreciated</u> cost of the improvements should be deducted from the total selling price. The report does not consider depreciation.

k. The report contains erroneous and makes false statements about the neighborhood.

l. The neighborhood is rated as being "stable" for "property value trends" and that in the last 12 to 16 months values have been stable, when, in fact, the values have been increasing. I show the trend lines in my Appraisal Report at pages 21 to 22 (Exhibit 3 to

this declaration.)

m. The market time is rated 3 to 6 months when in fact, similar properties are selling in less than 30 days.

n. The "Present Land Use" is marked "100% One Family" in the report when elsewhere in the neighborhood description the report states "Approx. 20% of properties are units ranging from 2 on a lot to medium size 1980's apartments".

o. The zoning is incorrectly shown as "SB-R1". Examination of the zoning map available on the City of Seal Beach website indicates the correct zoning is RHD-20.

p. The appraisal correctly reports that the lot size is 25 x 100 but in the comments section states "Subject lot is 37.5' wide which is wider than normal size lot. Premium lot due to size." These statements are false.

q. The appraisal states that it is determining value as "Most Probable Value" (see page 22 of the Garland appraisal) but appraisals for bankruptcy are supposed to be based on Fair Market Value, which is defined in Treasury Department Regulation 20.2031-1(b) as "Fair Market Value (FMV) is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy and sell and both having reasonable knowledge of the relevant facts." Therefore the appraisal does not have the definition of value required by the court.

7. My valuation of $658,000 for the subject property includes the comparable sales ignored in the Garland appraisal and the valuation falls within the range of indicated values for the property.

*In re Joseph A Barbara.*, Case No. 8:13-bk-10664-CB
Decl. for Millbern re: Opposition and Request for Hearing

a. The range of indicated values from the Listings falls from $804,954 to $837,000 with the "average" and the "mean" at $820,977. Therefore the upper limit of value for the subject property (based on the principle of Substitution) from the Listings is reconciled to $820,000

b. The range of indicated values from the remaining Closed Sales falls from $658,000 to $721,000 with the "average" and the "mean" at $686,200. A conclusion within the mid-range of the indicated values from the Closed Sales was selected with most weight given to the "mean" indicator (as none of the remaining comps were considered more reliable than the others). The valuation given by me is actually <u>below</u> the "mean."

I declare under penalty of perjury that the information contained herein is true and correct based on my personal knowledge and opinions. Executed on May 13, 2013 in Newport Beach, California.

_____
Steven C. Millbern, SRA

*In re Joseph A Barbara.*, Case No. 8:13-bk-10664-CB
Decl. for Millbern re: Opposition and Request for Hearing

# EXHIBIT 1

EXHIBIT 1

## Curriculum Vitae

### Steven C Millbern, SRA
Website: www.stevemillbern.net
Email: smillbern@cox.net
Voice: 949-900-6792

### PROFESSIONAL EXPERIENCE - OVER 35 YEARS

**Private Practice - Millbern & Associates**
An independent valuation firm specializing in Southern California residential real estate. Provided over 10 years of valuation consulting services and appraisal reporting for litigation, bankruptcy, estate, date of death, divorce, retrospective, lending, and REO/foreclosure purposes. Experienced with complex properties and high dollar residences.
- Designated an expert witness in Orange County Superior Court in both testimony and depositions.
- Designated an expert witness for Federal Court in depositions for bankruptcy cases.
- Experienced in providing services for estate, divorce, bankruptcy, and litigation.

**Corporate and Institutional Experience**
Served over 13 years in the appraisal departments in both appraisal and management roles for national lenders including Wells Fargo Bank. Experience included banks, savings and loans, and mortgage companies and included all sectors from "A" paper to "Sub-Prime".
- Investigated, reported, and advised legal department on suspected loan fraud cases.
- Authored and implemented appraisal and quality assurance policy.
- Provided customer support and value dispute resolution.
- Provided appraiser and underwriter training.
- Performed appraisals of residential property throughout Southern California.
- Performed appraisal reviews on a national basis.

**Independent Appraisal Employment Experience**
Served over 12 years in both appraisal and management roles for independent fee appraisal firms.
- Served as the high dollar specialist on luxury and waterfront residences.
- Performed appraisals of residential property throughout Southern California.
- Supervised 10 appraisers and 5 support staff.
- Provided customer support and value dispute resolution.

### UNIVERSITY EDUCATION
- California State University at Long Beach, Bachelor of Arts Degree 1972 Graduate.
- California State University at Fullerton, Certificate in Mortgage Lending 1994 Graduate.

### VALUATION SPECIFIC EDUCATION
Successfully completed over 950 hours of specific valuation education from Colleges and recognized industry leading course providers (predominantly the Appraisal Institute and the former Society of Real Estate Appraisers) since 1973.
- Valuation Courses: Numerous courses from 30 to 70 hours representing 300 hours of instruction.
- Seminars, Workshops, and Correspondence Courses: Numerous offerings averaging 2 to 20 hours of instruction representing over 550 hours of instruction to date.
- Compliant with the mandatory continuing education requirement for the State of California.

1

EXHIBIT 1

- Compliant with the voluntary continuing education requirement for the Appraisal Institute.
- A detailed breakdown of educational qualifications and coursework is available upon request.

## PROFESSIONAL MEMBERSHIPS, DESIGNATIONS, AND LICENSES

- California State Certified Real Estate Appraiser #AR001606 since 1991.
- Member of the Appraisal Institute since 1974. Awarded the SRA designation in 1984.
- Associate Member, Orange County Bar Association since 2008 to the Family Law, Commercial Law and Bankruptcy, Tax Law, and Trust & Estates sections.

## APPRAISAL INSTITUTE ACTIVITIES

- AI Candidate Guidance Committee         1988-1990
- AI Newsletter Committee                 1991-1994
- AI Chapter Board of Directors           1992-1994
- AI California State Govt. Affairs Committee  1992-1995
- AI Chapter Regional Representative      1992-1995
- AI Rep to California Coalition of Appraisers  1993-1994

## PUBLICATIONS

- Published over 20 articles on technical valuation issues & government affairs topics in the Southern California Appraisal Institute Newsletter.

## COMPUTER SKILLS

- Excel spreadsheets, Microsoft Word, and other Microsoft Office Group programs.
- Gnumeric spreadsheets for trend and valuation analysis and support.
- MLS software for all Southern California MLS Boards, reciprocal access throughout California.
- Digital Photography & Electronic Transmission of Appraisals.
- RealQuest, DataQuick, Metroscan, AIRD, & other public records systems
- DaVinci and Apex building sketch software.
- A La Mode / Win2000 appraisal software.

## COMMUNITY SERVICE ACTIVITIES

- Certified Disaster Relief Worker, Southern Baptist Western Region since 2006.
- Katrina Relief experience in 2005.
- Poverty Relief, Oaxaca Mexico 2004 and 2006.
- Disaster Relief, Southern California Wildfires 2008.
- Local Community Volunteer efforts:
    - Second Harvest Food Bank
    - City of Lake Forest Paint Day
    - Ontario Tent City Feeding Center

2

EXHIBIT 1